Our fifth case for this morning is United States v. Jesus Salgado. Mr. LaPuma. Thank you, Chief Judge Wood. May it please the Court, my name is Frank LaPuma and I represent the United States Supreme Court. I'm here today to speak on the case of Mr. LaPuma. I'm not a brick in the form of narcotics, I mean a brick in the form of a father who is a career criminal, and a mother who was recently indicted for the same offense conduct with which my client had pleaded guilty. Both of them telling Hazen what to do and when to do it. Likewise, both of them telling Mr. Rivera what to do and when to do it. The only reason my client got involved in this and became a participant in this offense was because his father, after he was deported to Mexico after serving prison time in this country for drug-related offenses, called him and said the only way to get the family back together again is for you to help me in my drug business. So can I just tell you what worries me about your argument? You paint, and I can certainly see that there is a sympathetic view of Mr. Jesus Salgado, our defendant. But the district judge seems to be aware of this, and more than that, the characterization of the facts that seems to persuade the district judge is that this is essentially a Salgado family business. The father is down there in Mexico, let's assume he stays there, but he's using his son, Jesus, as the on-the-scene U.S. manager, to use the word, and Jesus is, in fact, as middle managers will do, directing at least Rivera, maybe not, I mean the judge says maybe it's just the one person and there are lots of things covered by the managerial enhancement, but I'm having trouble seeing why that's not a permissible way to look at this set of facts. And then the judge actually takes the 35-53 factors into account and adjusts the sentence as he sees fit. Yes, Judge. Just going to your second point first, yes, he did drop down 18 months from the prescribed range that was calculated with the three levels for aggravating role, which we don't think was correct. We think it obviously should have been 160-188, and that the sentence imposed actually was a variance upwards, and therefore there was not an adequate explanation given for an upward variance or departure in the circumstance. But I think the key point to answer your question is the court below relied on this court's opinion in Figueroa, and there are parallels between that case and this case. Indeed, some of those parallels would seem to indicate passing on of messages, but in this instance, Judge, what makes this a little bit different than Figueroa in the first instance is Rivera went down to Mexico and was recruited by the father, Lorenzo Salgado, and had multiple meetings with him in Mexico and was constantly available to him by telephone. And what really is a significant distinction between Figueroa and this case I would respectfully submit is that as this court wrote in Figueroa, what was really a key factor was how the defendant in that case insulated himself from arrest and prosecution because he would have his mule go out and make the deliveries. In this case, Rivera, the alleged mule, the alleged supervisee, is actually in the safety and is on the streets exposing himself to the risk of arrest and prosecution in order to conduct a drug transaction. And so that is a critical distinction, I think, from Figueroa, the only case the district court relied on until, and it really just brings this down to, as this court has considered over and over again in a slew of cases, what is the status of the person? And in this case, the status of Jesus as compared to Mr. Rivera was simply one of equals, equal partnership. These guys were both mules, they both were doing the same tasks, and they both were at the bottom of the barrel. Lorenzo Salgado did not treat his son any better than he treated Mr. Rivera. And indeed, I would submit he treated him worse. Because as you can hear, as mentioned in the sentencing hearing, Mr. Salgado in a recorded conversation a week before his arrest is talking to his brother saying, I don't want to do this anymore. Ms. Lucuma, how do you get around a harmless error analysis here? Assume you're correct that the enhancement should not have been given. The court specifically said that he would have imposed the same sentence on Mr. Salgado regardless of the guideline calculation. And when he imposed sentence, he went through the 3553 factors very thoroughly. Under this court's precedent in U.S. v. Abbas, why isn't this harmless error? And are you asking us to overrule Abbas? I am not asking the court to overrule Abbas. And Abbas is a very clear case, and if I'm not mistaken, Judge, you might have been in this case. I'm very familiar with it. Yes, and I believe Chief Judge Wood was on that panel as well. And I think the point that the Seventh Circuit made in reviewing that decision was that there was a detailed explanation for the parallel result. And in that circumstance, the court found any error should not be deemed harmless. I mean, you cannot deem an error harmless where a sentencing court gives parallel reasons for if I'm wrong and if I'm actually going to be varying upwards from the proper range without a three-level enhancement. Then I have to give reasons for that. But the court never... But the reasons have to be tied to 3553A and the factors in 3553A. And the district court here did thoroughly go through those factors. And in fact, when he was done, he asked, I don't think you were the lawyer representing the defendant at the sentencing, but he asked the attorney if he had considered all of his primary arguments in mitigation. And the attorney said yes, and then he reiterated that again at the end. And the attorney said he didn't have anything further. So why wouldn't that explanation be sufficient to justify an upwards departure? Well, I think there are actually two potential waivers or harmless error issues here. One is when the court turned to defense counsel and said, have I considered all your points in mitigation? And the answer was yes. And that's a procedural error. I'm using that for the first harmless error in the Abbas analysis, just to show the thoroughness of the 3553A analysis. Well, with all due respect, Judge St. Eve, I just don't see it from the same angle as the court. Why? That's what I'm asking. Why wasn't the district court's analysis under 3553A sufficient to justify an upwards departure? Of four months, I would say. Because if the lower range that you're arguing for was the range, the top was 188. So it's a four month bump. Yes, four months. I mean, not to say that, I mean, I'm a big believer that people don't want even another day in prison, but nonetheless, it's four months. And I think the Supreme Court actually recognizes that as a liberty interest, which is very important in this analysis. He did cite statutory factors in a laundry list fashion. And that's what is going on in these types of proceedings. But what's that laundry list? I mean, I'm looking at what he, he tries to explain. You know, he goes back and forth about the criminal history DUI. It's serious. He talks about the Taco Bell incident. He talks about the family, the parents. I mean, I... And he talks thoroughly about... This is perfunctory. He talked thoroughly about the family and how on both sides there were mitigation and aggravation factors there. And then he talks about the amount of drugs and how that was a driving. So, again, what is it that was insufficient to justify an upward departure based on what he said? I think the mitigation and the mitigating evidence completely outweighed any of the aggravating evidence. I think the court mentions the Taco Bell incident, which is really just one night in a person's life. The government wants to define him by that one night when he was drunk. And it really caused no harm to anybody. It was inexcusable, of course. But it's certainly not enough. And the court also said non-violent, youthful offender, bad parents. And he did mention all those things going back and forth. But really, where are the competing... When we have these competing interests... The competing interest is that it's an awful lot of bad drugs. And I think... And that's so true, Judge. But that's already accounted for in the offense level for determining the quantity of drugs. He's already penalized for that. And I would add, he was the only defendant in this case, other than Lorenzo, who's a fugitive, who was subject to a mandatory minimum in this case because of the charging decision. And also, he was the only one who was given the two-level enhancement for his stash house, although both co-defendants who also pled guilty were involved in that stash house. I think that there's a number of reasons. And the other point is this, Judge. He was not involved in any decision-making or transactions. Like, this is what... I think we have your point, so thank you very much. Okay. And I think I should reserve whatever time I have for Ms. Greening's... I think you have to reserve, but I'll see how that goes. Okay. Thank you. Thank you. Ms. Greening. May it please the Court. My name is Kelly Greening on behalf of the United States. This Court should affirm the defendant's conviction and sentence because the District Court properly applied the 3B1.1 enhancement. So let me ask you, what worries me about this is that even though we don't have, say, the federal rules of evidence applying at sentencing proceedings, there's a general rule that says the evidence on which the District Court bases such things as the guideline calculations has to be fundamentally reliable. So I've been looking to find where is the evidence that Jesus Salgado is, in fact, a manager, not just a peer of Rivera. And I find in the pre-sentence report a conclusory statement that he's somebody who directs Buenaventura and Rivera. And I can find a little bit in the grand jury proceedings, but I don't know to what extent that's even being relied on. What's there other than just, oh, I'm going to put you, I mean, you can't just randomly throw a dart at the board and say you landed on the manager's square, so I'm going to make you a manager. Absolutely, Your Honor. The District Court had in front of it on the record undisputed factual materials. Well, just tell me, I've reviewed all of these things. What are they? The grand jury transcript of Jose Rivera at the time was undisputed. The defense counsel now on appeal raises arguments about the reliability of said transcript in its reply brief for the very first time. Didn't defense counsel raise that below in the objections that were filed to the pre-sentence investigation report and the objections to the enhancement? So the defense counsel below, Your Honor, specifically relied upon Mr. Rivera's grand jury transcript to make his own arguments. He did not dispute at that time that Mr. Salgado, the defendant, Jesus Salgado, was providing directives to Mr. Rivera. His point was that Lorenzo Salgado was also providing those directives to Mr. Rivera and also that Mr. Salgado was receiving directives from his father to give to Mr. Rivera. Didn't he point out, though, that Mr. Rivera had said something different when he was originally arrested and it conflicted with the grand jury testimony? So at the time of sentencing, that's not the exact point that defense counsel was making. What he pointed out was that in the criminal complaint there was citations to the post-arrest statement of Mr. Rivera. And in that post-arrest statement, Your Honor, Mr. Rivera stated that Lorenzo Salgado was the one who recruited him into the scheme. That was undisputed. That Lorenzo Salgado provided directives to Jose Rivera. That was also undisputed. But the post-arrest statement pieces that were included in the criminal complaint was not the full post-arrest statement. But wasn't it the defendant's argument that the judge should not rely on the grand jury testimony in full because of the statements that were attributed to Mr. Rivera in the complaint? And so therefore there's conflicting and not undisputed evidence? Respectfully, Your Honor, I disagree. I believe that the defense counsel stated explicitly that the grand jury testimony of Rivera clearly establishes that Lorenzo Salgado recruited him into the drug trafficking scheme. That's in line with what he said in his post-arrest statement. And then he goes on to say that although Jesus Salgado did relay directions to Rivera, he did so at the instructions of Lorenzo. And that's on page 6 of docket number 107. In addition at sentencing, the defense counsel at sentencing stated that we know from the statements of Mr. Rivera to the grand jury that on multiple occasions he met directly with Lorenzo Salgado in Mexico, so on and so forth. He was certainly relying on some of the grand jury testimony at sentencing. But it doesn't – you're saying that the aspect of the grand jury testimony where Mr. Rivera said that Mr. Salgado directed him was undisputed at sentencing. And it seemed to me from reading the sentencing and the 17-page objection to the PSR that was filed that that aspect of the grand jury testimony was disputed. And specifically it was disputed by comparing it and contrasting it to what was in the complaint that was attributable to Mr. Rivera. I understand your point, Your Honor. But I again would direct you to just page 6 of that docket number 107 where defense counsel stated explicitly, although Jesus did relay directions to Rivera, he's admitting that Jesus Salgado relayed directions to Jose Rivera. He did so at the instruction of Lorenzo Salgado. So how is it – the district court here in imposing the enhancement said that he was imposing the enhancement based on materials that are not disputed. How can we tell what those materials were? Your Honor, I think the record makes clear what the materials were that both parties relied upon in relation to this particular argument. But you can't say that the grand jury testimony in total is the material because as you've been discussing, there are parts of it that were undisputed, that Lorenzo is the kingpin for sure. Everybody sees that. But there are parts of it that were contested. Your Honor, respectfully – I mean, if Lorenzo is telling Rivera what to do and Lorenzo is telling Salgado what to do, then the criteria for the management enhancement begin to look a lot more questionable. Your Honor, it was undisputed at the time of sentencing that Mr. Rivera received directives from both Jesus Salgado and Lorenzo Salgado. That was undisputed. Yes, but the other way around too. Jesus is getting directives from Lorenzo, but he's doing the same thing Rivera is doing. So if they're peers, then he's not Rivera's manager. And getting directions for what? Giving directions for what? So Mr. Salgado, the defendant – What was undisputed is my question. Sorry, it was not very articulate. But if he said, oh, he was giving him directions, but to get the enhancement, you have to be more than just giving directions. So what is the undisputed evidence that he was giving directions about? Absolutely, Your Honor. Mr. Rivera was directed by the defendant to do the following things, as explained in Rivera's grand jury transcript, to drive to New Jersey in a BMW that Jesus Salgado gave to him. And Jesus Salgado showed him how to operate a trap inside that car, told him to go to New Jersey, meet with a contact, put narcotics proceeds into the trap in that car, and drive it back to Bensonville to the stash house that Jesus Salgado operated. On another occasion, he directed Mr. Rivera to go to Phoenix, Arizona, in that same car, to pick up narcotics from another contact. On yet another occasion, he sent Mr. Rivera 40 minutes away from the stash house in a Range Rover to go meet with a mechanic, where the mechanic would take out a vehicle battery from the trunk of the car. And we've learned through Mr. Rivera's testimony in the course of the investigation that that was how they transported their kilograms of narcotics, was in vehicle batteries. The defendant also paid Mr. Rivera on several occasions, as outlined in the grand jury testimony, both expenses and just payments for his work. And in addition, there was an occasion where, when Mr. Rivera was on his way to one of these pickups, the defendant called him back and said, come back to Chicago right now and don't ask any questions. These are examples of ongoing and continuous supervision, where the defendant was issuing directives and then making sure that Mr. Rivera was following through on those directives. So this is basically all, you don't have this unless you have the grand jury testimony. These are from the grand jury testimony. Yeah, I mean all of your evidence is really from the grand jury. The grand jury testimony was corroborated by this intercepted telephone call between Mr. Rivera and the defendant, in which the hierarchy is a little bit more fleshed out. You can hear them discussing something going awry in the drug trafficking business, And the judge never mentioned the grand jury testimony. Not explicitly, Your Honor, but it's one of the undisputed. Or the phone call. Correct. And the phone call was disputed, although the defendant relied on it as well. He disputed the meaning of what you're giving. Absolutely, Your Honor. So the materials themselves were undisputed at the time of sentencing. The parties argued different interpretations of those materials, but the materials themselves were undisputed. In addition, the district court went on to clearly express that even if 3B1.1 had not applied, even if the court had been completely incorrect in calculating that enhancement and adding it on to the guidelines, that he would have imposed the exact same sentence of 192 months, and it wasn't a conclusory comment. He actually explained why that was. He stated that there's a difference between a manager in a five-person conspiracy who manages all five people, and a manager who manages just one person in a five-person conspiracy. He stated that he had taken into account the defense counsel's arguments regarding 3B1.1 in his 3553 analysis, and thus had imposed this below-guidelines sentence of 192 months. All right. If there are no further questions from the panel, the government respectfully requests that this court affirm the conviction and sentence. Thank you very much. I'll give you one final minute, Mr. LaPuma, if you want it. Thank you, Chief Judge Wood. Judge, I would just add that the government here is really conflating offense conduct. And just to look at one example of that, and that would be the money. The case agent and the government throughout the course of this proceeding said that the mother, Veronica Mendoza, controlled the purse strings. Everyone agreed with that. So what's Jesus doing when Ms. Greenick says she's paying Mr. Rivera? Is he paying? Is Jesus paying Mr. Rivera? Physically, yes. But he's not authorized to do that. That authorization comes from the discretion of his mother and father to elect to tell him, give him this money for a bus ticket or for whatever other purpose. That's all it is. And based on these arguments and what's in our brief, I would respectfully ask the court to remand this case for resentencing and vacate the final judgment order and the sentence imposed. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.